UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADDISON WHITE, JR.,

       Plaintiff,                                      Hon. Richard Alan Enslen

v.                                                    Case No. 1:06-CV-797

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 48 years of age at the time of the ALJ's decision.  (Tr. 14).  He completed the tenth grade and worked previously as an electrician.  (Tr. 14, 73).

Plaintiff applied for benefits on June 16, 2003, alleging that he had been disabled since May 7, 2003, due to a pain in his right leg and knee.  (Tr. 47-49, 72).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 24-46).  On May 12, 2005, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Sharon Princer.  (Tr. 268-320).  In a written decision dated December 19, 2005, the ALJ determined that Plaintiff was not disabled.  (Tr. 14-22).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 4-6).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On August 21, 1997, Plaintiff reported that he was experiencing "chronic" pain in his right leg.  (Tr. 188).  X-rays of his lumbar spine revealed "minimal degenerative change" at L5-S1, but were "otherwise unremarkable."  (Tr. 198).

On September 2, 1997, Plaintiff participated in an EMG/NCT study to assess complaints of "burning dysethesias in the anterior lateral thigh on the right side." (Tr. 144). The results of this examination revealed:

> The EMG nerve conduction study does [uncover] evidence of a mild L5 radiculopathy. This is likely correlated with his history of back pain but does not correlate with his thigh numbness and dysesthesia. Instead it is likely that he has meralgia paresthetica[1] caused by entrapment of the lateral femoral cutaneous nerve usually in the groin or pelvic area. This would not be diagnosed by this study since it is a pure sensory nerve and damage to it leaves no traces of abnormality in any muscles.

*Id.*

On January 22, 1998, Plaintiff reported that medication had improved his pain. (Tr. 185). On July 31, 1998, Plaintiff reported that he was "still having problems" with his right leg. (Tr. 183). An examination revealed 5/5 strength with no evidence of "gait disturbance." The doctor did, however, observe hyperesthesia in Plaintiff's right thigh. Plaintiff was diagnosed with meralgia paresthetica. *Id.*

On November 21, 2001, Plaintiff was examined by Dr. Thomas Basch. (Tr. 238). Plaintiff reported that he was experiencing pain and burning in his right thigh. The doctor diagnosed Plaintiff with lateral femoral cutaneous nerve entrapment. Plaintiff was administered a nerve block injection. *Id.*

On January 21, 2003, Plaintiff was examined by Dr. Basch. (Tr. 236-37). Plaintiff reported that his right thigh "remains numb and painful in lateral distributions." (Tr. 236). Plaintiff

---

[1] Meralgia paresthetica is a "painful mononeuropathy of the lateral femoral cutaneous nerve (LFCN), meralgia paresthetica is commonly due to focal entrapment of this nerve as it passes through the inguinal ligament." Meralgia Paresthetica, *available at* http://www.emedicine.com/neuro/topic590.htm (last visited on January 16, 2008).

reported that nerve block injections have been "a hit or miss proposition." Plaintiff was administered another nerve block injection. The doctor also noted that Plaintiff may be a candidate for nerve release surgery. *Id.*

On February 26, 2003, Plaintiff participated in an EMG examination of his upper extremities, the results of which revealed "no significant EMG changes" and "no electrical evidence of median ulnar or radial nerve entrapment." (Tr. 121). On March 30, 2003, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed "no significant disc bulge or herniation." (Tr. 120).

On May 3, 2002, Plaintiff was examined by Dr. Basch. (Tr. 235). Plaintiff reported that previous nerve block injections "help[ed] him for a month or two but then pain returns." Plaintiff reported that it was becoming "harder and harder" to perform his job as an electrician. He was given another nerve block injection. *Id.* On June 21, 2002, Plaintiff underwent a cryoablation procedure, which afforded Plaintiff only one week of relief. (Tr. 233-34).

On March 4, 2003, Plaintiff was examined by Dr. Basch. (Tr. 231). Plaintiff reported that his pain was "worsening." The doctor observed that he was reluctant to prescribe "stronger pain medication" because Plaintiff "is an electrician who works with high voltage." Plaintiff received another nerve block injection and was instructed to consider surgical intervention. *Id.* Plaintiff was subsequently examined by a surgeon, who recommended against surgery. (Tr. 230). On May 7, 2003, Plaintiff was examined by Dr. Basch. The doctor reported that:

> At this point I simply don't have much else to offer [Plaintiff]. He is seriously considering disability and I think the time has come to do this. The work he does as an electrician involves sitting, squatting, twisting and simply places pressure and torsion across this branch of the inguinal nerve. In the patients I have seen with this problem, it

> seems like we've either been able to "hit a home run" or have been unable to treat it well at all and unfortunately [Plaintiff] is falling into the latter category. We even tried freezing it with a cryoablation probe but to no avail.

*Id.*

Soon thereafter, Dr. Basch "took [Plaintiff] off of work" because he could no longer climb ladders and because his pain worsened when he squatted or sat for "too long." (Tr. 227, 229).

On June 8, 2004, Plaintiff reported that his thigh pain was "still significant, but does respond for about 3-4 weeks to injection." (Tr. 226). Plaintiff received another nerve block injection. *Id.* This nerve block provided Plaintiff with "6 to 7 weeks of excellent relief." (Tr. 254). Plaintiff received another injection on September 7, 2004. *Id.*

On December 7, 2004, Plaintiff was examined by Dr. Basch. (Tr. 253). The doctor characterized Plaintiff's condition as "intractable," but noted that nerve block injections "do help." *Id.* Plaintiff received another nerve block injection on February 15, 2005. (Tr. 251).

On April 26, 2005, Plaintiff reported that he "did quite well" with his most recent nerve block injection, but also reported that "as he becomes more active with the improving weather, there are times that his groin pain and anterior thigh pain really flares." (Tr. 250).

At the administrative hearing Plaintiff testified that he can sit for 30 minutes without his medication. (Tr. 284). He reported that if he takes his medication he can sit for a longer period of time, but that his "head is not as clear." Plaintiff reported that he can stand for 10-15 minutes and walk "maybe" one block. *Id.* Plaintiff reported that lifting was difficult "because it puts strain on [his] leg." (Tr. 285). Plaintiff testified that he cannot lift anything heavier than a gallon of milk. (Tr. 285, 304). Plaintiff testified that he was taking several medications to treat his pain, including

6

morphine and vicodin. (Tr. 286-87). Plaintiff reported that his medications cause him to experience fatigue and forgetfulness. (Tr. 287-88). Plaintiff testified that his leg pain rated between 7-10 (on a scale of 1-10). (Tr. 289-90).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffers from neuropathic pain in the right thigh from lateral femoral cutaneous nerve entrapment. (Tr. 18). The ALJ found that while this is a severe impairment it did not satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was unable to perform his past relevant work there existed a significant number of jobs which he could perform despite his limitations. (Tr. 19-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Not Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light[3] work subject to the following limitations: (1) he requires a sit/stand option; (2) he can occasionally engage in pushing and pulling activities with his right lower extremity; and (3) he can occasionally bend, kneel, squat, crouch, and crawl. (Tr. 19). A vocational expert testified that there existed approximately 23,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 315-16). Accordingly, the ALJ determined that Plaintiff was not disabled because there existed a significant number of jobs he could perform despite his limitations.

      a. The ALJ's determination regarding Plaintiff's RFC is not supported by substantial evidence

A claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also*, *Shaw v. Apfel*, 220 F.3d 937, 939 (8th Cir. 2000) (same); *Lanclos v. Apfel*, 2000 WL 1054893 at *3, n.3 (9th Cir., July 31, 2000) (same); *Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990) (to properly conclude that a claimant is capable of performing work requires "a determination that the claimant can *hold* whatever job he finds for a significant period of time").

---

[3] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

There is no question that Plaintiff suffers from meralgia paresthetica, caused by entrapment of the lateral femoral cutaneous nerve. As Dr. Basch reported, Plaintiff's impairment is exacerbated by activities such as sitting, squatting, and twisting because such activities put pressure on the entrapped nerve. (Tr. 230). This conclusion is not contradicted by any evidence in the record. Despite this uncontroverted (and well-supported) medical opinion, the ALJ concluded that Plaintiff can nonetheless perform bending, kneeling, squatting, crouching, and crawling activities. This conclusion is inconsistent with Dr. Basch's analysis of Plaintiff's impairment. While it was appropriate for the ALJ to discount Dr. Basch's opinion that Plaintiff is disabled, the ALJ's decision to ignore this aspect of Dr. Basch's analysis enjoys no support in the record.

Plaintiff testified that his pain and other symptoms was treated with morphine and vicodin, as well as an anti-seizure medication. (Tr. 286). Plaintiff testified that as a result of taking these medications he experiences forgetfulness, fatigue, and difficulty maintaining his balance. (Tr. 287-89). With respect to his fatigue, Plaintiff testified that he doses off "a lot" during the day. (Tr. 288). The ALJ's RFC determination failed to take into consideration the effect that such medication has on Plaintiff's ability to perform work activities.

Plaintiff also testified that he was limited as a result of his impairment to an extent beyond that recognized by the ALJ. (Tr. 282-85). Contrary to the ALJ's determination, Plaintiff's testimony in this regard is consistent with the objective medical evidence and Plaintiff's treatment history. Plaintiff's credibility is further bolstered by his positive work history, including Plaintiff's repeated attempts to continue working despite suffering from severe pain. *See, e.g., Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (the ALJ must consider a claimant's work history when assessing his credibility and a good work history strengthens the claimant's credibility); *Miller v. Barnhart*,

2002 WL 31243422 at *5 (D. Kansas, Sept. 17, 2002) (claimant's work history is relevant in assessing his credibility); *Warren v. Barnhart*, 190 F.Supp.2d 1173, 1178 (E.D. Ark. 2002) (*citing Nunn v. Heckler*, 732 F.2d 645 (8th Cir. 1984)) ("a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability"); *Tyson v. Apfel*, 107 F.Supp.2d 1267, 1270-71 (D. Colo. 2000) ("[w]here a claimant has a good work history, she is entitled to substantial credibility when she then asserts that she is unable to work").

The Court further notes that none of Plaintiff's care providers have called into doubt the veracity of Plaintiff's subjective complaints. Plaintiff's subjective allegations are consistent with the activity questionnaires he completed, as well as the testimony provided by Plaintiff at the administrative hearing. To the extent that Plaintiff testified that he was impaired to an extent beyond that recognized by the ALJ, the Court finds that the ALJ's decision is not supported by substantial evidence.

In sum, the ALJ's RFC determination is not supported by substantial evidence. As noted above, the vocational expert testified that based on Plaintiff's RFC there existed a significant number of jobs which Plaintiff could perform despite such limitations. However, the ALJ's RFC determination is not sufficiently supported by the evidence of record. In short, therefore, the hypothetical questions, the response to which the ALJ relied upon to support his decision, was based upon an improper RFC determination. Accordingly, the ALJ's conclusion that there exists a significant number of jobs which Plaintiff can perform despite his limitations, is supported by less than substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

b.  Evidence of Plaintiff's Disability is not Compelling

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled. The Court recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings, including but not necessarily limited to, a determination of Plaintiff's RFC and whether there exist a significant number of jobs which Plaintiff can perform consistent with such.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  January 17, 2008                               /s/ Ellen S. Carmody
                                                               ELLEN S. CARMODY
                                                                United States Magistrate Judge